**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| MICHAEL HAMBY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2020-0911-BWD |
| | ) | |
| RICHARD L. SAPP FARMS, LLC, | ) | |
| RICHARD L. SAPP, SR., RICHARD | ) | |
| L. SAPP, JR., RICHARD L. SAPP, III, | ) | |
| TREY SAPP, and MICHELLE SAPP, | ) | |
| | ) | |
| Respondents. | ) | |

## POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Final Report:  December 4, 2023
Date Submitted:  November 13, 2023

1.     This final report makes post-trial findings of fact and reaches conclusions of law concerning Petitioner Michael Hamby's ("Petitioner") claims for trespass and nuisance, for which he seeks money damages and a permanent injunction.[1]

2.     On October 23, 2020, Petitioner initiated this action through the filing of a Petition for Permanent Injunction and Damages (the "Petition").[2]  Petitioner owns real property in Harrington, Delaware, bordered on three sides by agricultural lands owned by Richard L. Sapp Farms, LLC ("Sapp LLC," and together with

---

[1] The transcript of the trial held in this matter is cited as "Tr. at __".  *See* Dkt. 79.

[2] Pet. for Permanent Inj. and Damages [hereinafter, "Pet."], Dkt. 1.

Richard L. Sapp, Sr.,[3] Richard L. Sapp, Jr., Richard L. Sapp, III,[4] and Michelle Sapp, "Respondents").[5] The Petition alleges that Respondents irrigate crops on their property using "industrial sized irrigation systems" that "propel water long distances at high pressure," "trounc[ing] Petitioner's backyard with water from these giant apparatuses," interfering with Petitioner's "right to quiet use and enjoyment of his backyard," and damaging structures on Petitioner's property.[6]

3. The Petition alleges three counts. Count I seeks a "permanent injunction prohibiting trespass onto Petitioner's property."[7] Count II seeks "damages for trespass and nuisance interfering with [P]etitioner's quiet use and enjoyment" of his property.[8] Count III seeks "damages for trespass to land and

---

[3] On July 25, 2023, Respondents filed a Notice of Suggestion of Death for Richard L. Sapp, Sr. Dkt. 64. Court of Chancery Rule 25(a)(1) states that "[i]f a party dies and the claim is not thereby extinguished, the Court may order substitution of the proper parties. . . . Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of death as provided herein for the service of a motion, the action shall be dismissed as to the deceased party." Ct. Ch. R. 25(a)(1). *See also* Tr. at 4:21-5:8 (reminding Petitioner of the deadline to file a motion for substitution). Because Petitioner has not filed a motion for substitution, I recommend that this action be dismissed as to Richard L. Sapp, Sr., to the extent such dismissal is not mooted by the other recommendations herein.

[4] The caption in this action also includes "Trey Sapp," a nickname for Richard L. Sapp, III. Tr. at 43:10-14.

[5] Respondents Richard L. Sapp, Sr., Richard L. Sapp, Jr., Richard L. Sapp, III, and Michelle Sapp are members of the Sapp family and work for Sapp LLC. *Id*. at 43:4-44:8; Dkt 8 ¶ 4.

[6] Pet. ¶¶ 10, 12-14, 29-34.

[7] *Id*. ¶¶ 10-20.

[8] *Id*. ¶¶ 21-27.

2

chattels for destruction of Petitioner's structures"—namely, three sheds and a pole on Petitioner's property.[9]

4. On December 15, 2020, Respondents filed an Answer to Petition for Permanent Injunction and Damages With Affirmative Defenses and Counterclaim (the "Counterclaim").[10] Respondents withdrew the Counterclaim on September 1, 2023.[11]

5. The Court held a one-day trial on October 2, 2023. Post-trial briefing concluded on November 13, 2023.

## FINDINGS OF FACT

6. The evidence presented at trial supports the following findings of fact:

a. Petitioner owns real property located at 5050 Milford Harrington Highway in Harrington, Delaware (the "Hamby Property").[12] The Hamby Property is Petitioner's residence.[13]

b. Sapp LLC owns agricultural lands located at 5144 Milford Harrington Highway in Harrington, Delaware (the "Sapp Property").[14]

---

[9] *Id.* ¶¶ 28-34.

[10] Dkt. 8.

[11] Dkt. 75 at 2 n.1.

[12] Dkt. 8 ¶ 1.

[13] Tr. at 9:5.

[14] Dkt. 8 ¶ 4.

3

c.  The Sapp Property borders the Hamby Property on three sides, with the fourth side of the Hamby Property facing Milford Harrington Highway.[15]

d.  Prior to 2014, Sapp LLC owned property bordering only the west side of the Hamby Property.[16]  In 2014, Sapp LLC acquired parcels bordering the north and east sides of the Hamby Property.  At that time, Respondents expressed an interest in purchasing the Hamby Property, but Petitioner declined.[17]  Petitioner believes that Respondents have harassed him due to his refusal to sell the Hamby Property.[18]

e.  Respondents use the Sapp Property and other lands spanning 2,500 acres from Milford to Harrington for commercial agricultural operations.[19]  Respondents grow soybeans and corn on a rotating basis every other year.[20]  In years when Respondents grow corn, crops are planted in mid-April and are harvested at the end of September through October.[21]  In years when Respondents grow soybeans, crops are planted at the end of May or the beginning of June and are harvested in

---

[15] Tr. at 44:9-24.

[16] *Id*. at 12:1-2

[17] *Id*. at 12:3-5.

[18] *Id*. at 7:9-10:12; 12:5-6; 78:7-10.

[19] *Id*. at 44:17.

[20] *Id*. at 45:3-4.

[21] *Id*. at 45:10-21.

October through November.[22] During the growing season, Respondents use a center pivot irrigation system (the "Irrigation System") to water crops. The frequency with which Respondents use the Irrigation System varies depending on the weather but, at most, occurs twice per week during a drought.[23]

      f. Petitioner contends that since 2015,[24] the Irrigation System has repeatedly "pelted" the Hamby Property "with a large amount of water," causing damage to sheds on his property, interfering with his enjoyment of his property,[25] and causing him mental stress.[26]

        i. At trial, Petitioner submitted nine videos into evidence, which, according to Petitioner, "show [the Irrigation System] beating up [his] property."[27] Two videos, both dated July 10, 2018, show the Irrigation System overhanging and spraying water directly onto the Hamby Property, including onto a shed located on the Hamby Property.[28] Two additional videos, one dated June 30,

---

[22] *Id*. at 45:22-46:1.

[23] *See id*. at 46:6-18 (explaining that Respondents gauge irrigation "on Mother Nature").

[24] *Id*. at 31:21-23.

[25] *Id*. at 9:4-6; *see also id*. at 13:21-15:8 (explaining that due to Petitioner's disability, minimal amounts of water can impede his ability to move in his backyard); *id*. at 14:3-9 (testifying that Petitioner can no longer host bonfires on his property).

[26] *Id*. at 10:10-11:5; 21:15-24.

[27] *Id*. at 26:12-15.

[28] *See* Pet'r's Video Exs. at 20180710_164344.mp4 (July 10, 2018); 20180710_164801.mp4 (July 10, 2018). Petitioner alleges that water from the Irrigation

2020 and another dated July 29, 2020, also show the Irrigation System spraying water onto the Hamby Property.[29]

ii. On October 26, 2019, Petitioner wrote Respondents a letter requesting that they "make changes to the irrigation system directly behind [him] to keep the water off [his] property."[30]

iii. Respondent Richard L. Sapp, Jr. ("Mr. Sapp") became aware that the Irrigation System sprayed water onto the Hamby Property "once or twice"[31] in 2019 or 2020,[32] after lightning damaged the Irrigation System's skinner valve that "shuts the irrigation off on the end of the pivot when it comes to a road or a house."[33] When this was brought to Mr. Sapp's attention, he fixed the valve and took additional steps to prevent water from spraying onto the Hamby Property, including "plug[ging] the sprinkler next to [the valve] because it was shooting on [Petitioner's] property a little bit across the corner of the grass, and . . . put[ting] a

---

System damaged the shed shown in these videos, as well as two other sheds on his property. To support this claim, Petitioner introduced into evidence undated photographs of the sheds showing some wear on the siding; however, it is not apparent from those photographs whether water from the Irrigation System caused any supposed damage. *See* Pet'r's Exs. A-C.

[29] *See* Pet'r's Video Exs. at 20200630_084649(1).mp4 (June 30, 2020); 20200729_204150.mp4 (July 29, 2020).

[30] Pet'r's Ex. II.

[31] Tr. at 49:8.

[32] *Id*. at 50:15-17.

[33] *Id*. at 49:11-20.

water shut-off valve in the next sprinkler down so when the big gun goes off, it goes off also."[34] Since the sprinkler valve was shut off in 2019 or 2020, one to two acres of the Sapp Property cannot be irrigated.[35]

       g. In or around October 2020, Petitioner installed a pole on the boundary line between the Hamby Property and the Sapp Property (the "Pole"). Petitioner testified that he intended to install a light on the Pole,[36] but the record evidence suggests, and I find, that Petitioner installed the Pole in order to impede the Irrigation System as it passed by the Hamby Property.[37] Petitioner introduced into evidence one photograph showing the Pole leaning at an approximately 80-degree angle overhanging the Sapp Property.[38] Shortly after Petitioner installed the Pole, Mr. Sapp visited the property with a State Trooper, used a "six-foot level . . . right on top of [Petitioner's] survey mark[er]" to mark with a pencil the exact portion of the Pole that was overhanging the Sapp Property, and cut down the trespassing

---

[34] *Id*. at 50:9-14.

[35] *Id*. at 50:23-51:3 (explaining that the Irrigation System no longer irrigates the north and west corners near the Hamby Property).

[36] *Id*. at 17:18-20.

[37] *Id*. at 54:3-56:17.

[38] Pet'r's Ex. IV-B.

portion of the Pole.[39] Petitioner approached and asked the State Trooper to arrest Mr. Sapp, but the State Trooper "said that they didn't trespass."[40]

**CONCLUSIONS OF LAW**

7. Petitioner asserts that Respondents committed trespass and nuisance by causing the Irrigation System to spray water onto the Hamby Property.[41] Petitioner further asserts that Respondents committed trespass to chattels by causing damage to three sheds and by cutting down the Pole.[42]

8. First, Petitioner asserts a claim against Respondents for trespass. Petitioner has met his burden to prove that Respondents committed trespass by causing the Irrigation System to spray water onto the Hamby Property on three occasions. However, Petitioner has not proven that he is entitled to more than nominal damages, or to a permanent injunction.

a. "The elements of trespass, a strict liability offense, are as follows: '(1) the plaintiff must have lawful possession of the property; (2) the defendant must have entered onto the plaintiff's land without consent or privilege;

---

[39] Tr. at 54:9-11; 57:18-58:3. Petitioner testified that he "couldn't see [the Pole] interfering with farm equipment," but also that "[y]ou can see that irrigation system clearly over top of where the light pole was. So that was inhibiting his irrigation system, I guess." *Id*. at 18:10-19.

[40] *Id*. at 33:5-8.

[41] Pet. ¶¶ 10-26.

[42] *Id*. ¶¶ 29-33.

and (3) the plaintiff must show damages.'" *Kuhns v. Bruce A. Hiler Delaware QPRT*, 2014 WL 1292860, at *19 (Del. Ch. Mar. 31, 2014) (citation omitted), *aff'd sub nom. Hiler v. Kuhns*, 116 A.3d 1243 (Del. 2015). "[T]respass 'may be said to consist of the intrusion of water from a condition created by the [defendant] which interferes with plaintiffs' use of their property.'" *Beckrich Hldgs., LLC v. Bishop*, 2005 WL 5756847, at *9 (Del. Ch. June 9, 2005) (alteration in original) (citation omitted). "[T]he law implies damages for . . . a trespass, but the amount depends upon the damages actually done." *Kuhns*, 2014 WL 1292860, at *19 (citation and internal quotation marks omitted).

      b. Petitioner met his burden to prove trespass on three occasions. Specifically, videos admitted into evidence demonstrate that the Irrigation System sprayed water onto the Hamby Property on July 10, 2018, June 30, 2020, and July 29, 2020.[43] Although Petitioner contends the Irrigation System *repeatedly* sprayed water onto his property, the only evidence in the record supporting that claim is Petitioner's own self-serving, and vague, testimony.[44] On the other hand, Mr. Sapp testified that he was aware the Irrigation System sprayed water onto the Hamby

---

[43] *See* Pet'r's Video Exs. at 20180710_164344.mp4 (July 10, 2018); 20200630_084649(1).mp4 (June 30, 2020); 20200729_204150.mp4 (July 29, 2020).

[44] Tr. at 9:4-6; 13:24-14:2; 21:15-24. *See also id*. at 31:10-13 (agreeing Petitioner's property is not "completely saturated with water every day"); *id.* at 31:16-20 (claiming that Respondents spray water onto Petitioner's property every day it is not raining from May through November).

Property "once or twice," but promptly resolved those issues.[45]  Based on the evidence presented at trial, I find that, aside from the three instances identified above, Petitioner has not met his burden to prove by a preponderance of the evidence that Respondents committed trespass by causing the Irrigation System to repeatedly spray water onto the Hamby Property.

          c.  Petitioner seeks $78,800.00 in damages for Respondents' acts of trespass, including $26,000.00 for the replacement of, or repairs to, the sheds.[46] "[D]amages for trespass to land are generally a calculation based on the difference between the value of the land before the trespass occurred and the value of the land after the trespass occurred."  *Kane v. NVR, Inc.*, 2020 WL 583812, at *5 (Del. Ch. Feb. 6, 2020) (alteration in original) (citation and internal quotation marks omitted), *exceptions denied*, 2020 WL 3027239 (Del. Ch. June 5, 2020.[47]  If land is held for "personal enjoyment," a plaintiff may seek "restoration" damages, *i.e.*, the cost of repairs or replacements "as would be economically and physically reasonable and

---

[45] *See* notes 31-35, *supra*.

[46] Petitioner seeks a total damages award of $80,000.00, which includes $52,800.00 for the loss of enjoyment of his property and $1,200.00 to replace the Pole.  Dkt. 81 at 2.  I note that in his Petition, Petitioner sought $14,100.00 for damage to the sheds, $100,000.00 in damages for interference with his enjoyment of his property, and $1,000.00 for damage to the Pole.  Pet. ¶¶ 27, 31, 34.

[47] *See also Brandywine 100 Corp. v. New Castle Cnty.*, 527 A.2d 1241, 1987 WL 37805, at *1 (Del. 1987) (TABLE) (affirming "[t]he trial court's decision to apply the 'before and after' measure" of damages).

feasible under all the surrounding circumstances." *Farny v. Bestfield Builders, Inc.*, 391 A.2d 212, 213 (Del. Super. 1978). "Restoration is generally not allowed, however, if it is disproportionate to the diminution in value caused by the trespass . . . ." *Gordon v. Nat'l R.R. Passenger Corp.*, 1997 WL 298320, at *9 (Del. Ch. Mar. 19, 1997).

d. Assuming, for the sake of completeness, that Petitioner had met his burden to prove that the Irrigation System repeatedly sprayed water onto the Hamby Property, he failed to prove damages. Petitioner did not provide any evidence of the value of the Hamby Property, or any buildings thereon, before or after the acts of trespass identified above. Instead, Petitioner submitted (1) photographs of worn sheds on his property, which do not demonstrate whether any supposed damage was caused by water;[48] and (2) cost estimates for replacing the sheds. Even if that evidence were admissible,[49] it does not demonstrate the difference in the value of the property before and after any supposed trespass.[50]

e. Moreover, Petitioner failed to prove his entitlement to restoration damages. Because Petitioner offered no evidence to show the extent of any harm

---

[48] Pet'r's. Exs. III A, IV B-D, V B-C.

[49] In light of the recommendations herein, I need not separately address Respondents' Motion in Limine, which seeks to exclude certain cost and pricing estimates as inadmissible hearsay; not reflective of the proper measure of damages; and prejudicial and confusing. Dkt. 68.

[50] Pet'r's Exs. B-F.

caused by the trespass, he failed to prove that restoration damages would not be disproportionate to the diminution in value caused by the trespass.

f. Because Petitioner has failed to prove actual damages caused by Respondents' trespass, I recommend an award of nominal damages in the amount of $30.00.[51]

g. Petitioner also seeks an order permanently enjoining Respondents' trespass for water entry.[52] Although Petitioner proved three instances of trespass, he has not identified any act of trespass since 2020. And, at trial, Mr. Sapp credibly testified that issues with the Irrigation System that caused water to be sprayed onto the Hamby Property were resolved years ago.[53] Because "equity does not generally assume future torts, and there is no ongoing trespass here, just a suspicion that trespasses will happen in the future," I recommend that Petitioner's

---

[51] Petitioner also seeks $52,800.00 in damages for the loss of enjoyment of his property. At trial, Petitioner characterized these damages as "mental anguish." Tr. at 78:11-15; *see also* Dkt. 74 at 1-2. Petitioner failed to provide any expert evidence supporting his claimed damages, including damages arising from mental injuries. "Without expert testimony, the Court is not able to find that [Petitioner] suffered this type of harm or that [Respondents'] conduct caused such harm." *Dayton v. Collison*, 2019 WL 4668157, at *9 (Del. Super. Sept. 24, 2019), *aff'd*, 250 A.3d 763 (Del. 2021); *see also id.* at *9 n.62 ("Similar to bodily injuries suffered in auto accidents, the connection between Defendant's alleged actions and Plaintiffs' mental injuries must be proven by testimony of a competent medical expert.").

[52] Pet. ¶ 20.

[53] *See* notes 31-35, *supra*.

request for a permanent injunction be denied. *Swann Keys Civic Ass'n v. Dippolito*, 2022 WL 17999590, at *8 (Del. Ch. Dec. 30, 2022).

9. Second, Petitioner asserts a claim against Respondents for nuisance. For the same reasons Petitioner failed to prove damages for trespass, he also failed to prove damages for nuisance.

    a. "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of their land." *Dayton*, 2019 WL 4668157, at *5. "A person who participates in an activity that creates a nuisance is generally liable to third persons for harm resulting from the nuisance." *Hazlett v. Fletcher*, 1985 WL 149636, at *2 (Del. Ch. Mar. 1, 1985). "The proper measure of damages for a permanent nuisance is the diminution in the market value of the property," and "the measure of general damages [for a temporary nuisance] is the diminution of use or rental value of the property." *Id.* at *3.

    b. It is unclear whether Petitioner claims a permanent or temporary nuisance. Either way, he provided no evidence of the market or rental value of the Hamby Property, or any structures thereon, nor did he provide any evidence establishing the extent of any diminished use, beyond vague testimony about fewer social gatherings and inhibited movement on his property. As a result, even assuming the three trespasses identified above also constituted a private nuisance, Petitioner failed to prove damages arising therefrom.

13

10. Third, Petitioner asserts a claim for trespass to chattels against Respondents for cutting down the Pole. Petitioner has not met his burden to prove this claim.

a. Petitioner put forth no evidence demonstrating that any portion of the Pole was located on the Hamby Property, let alone that the portion of the Pole that Respondents cut down was on his property. In fact, the record shows the opposite—that Respondents removed only the portion of the Pole that was overhanging the Sapp Property.[54] *Cf. L. v. Lee*, 1988 WL 67851, at \*3 (Del. Super. June 21, 1988) ("[D]efendants have an absolute common law right to remove encroaching branches and roots as long as they do not go beyond their boundary line."). Petitioner, therefore, is not entitled to recover for damage to the Pole.

11. For the reasons set forth above, I recommend entry of a judgment against Respondents in the amount of $30.00. This is a final report pursuant to Court of Chancery Rules 143 and 144. Exceptions may be taken within eleven days of the date hereof.[55]

/s/ Bonnie W. David
Bonnie W. David

Magistrate in Chancery

---

[54] Pet'r's Exs. IV B, VII; Resps.' Exs. B-C; Tr. at 54:12-16; 57:7-58:3.

[55] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").